**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Crim. No. 15-599-02** |
| | : | |
| **MOHAMED KHELIL-CHERFI** | : | |

**Diamond, J.** **August 12, 2026**

**MEMORANDUM**

Having pled guilty in 2016 to committing a series of robberies, Defendant Mohamed Khelil-Cherfi entered into an Agreement that included the Government's then standard waiver, by which he gave up "all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution." (Doc. No. 42 ¶ 13.) Defendant completed his jail term on June 16, 2023, and now, represented by counsel, moves for early termination of supervised release. (Doc. No. 143); see 18 U.S.C. § 3583(e)(1). The Government argues that the waiver provision in the Agreement bars this challenge. (Doc. No. 152.) Although I conclude that Defendant has not waived his right to seek early termination of supervision, I will nonetheless deny his Motion.

## I. BACKGROUND

Between September 10 and October 11, 2015, Defendant and Mahmoud Aguibi (who was armed) robbed five food delivery workers in North Philadelphia. (Doc. No. 143 at 4.) Defendant also participated in the armed robberies of five other delivery workers on five other occasions. (Doc. No. 152 at 2 n.1.)

On November 3, 2016, Defendant plead guilty to five counts of robbery which interferes with interstate commerce and two counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence. (Doc. No. 40); see 18 U.S.C. §§ 1951(a), 924(c). Defendant stipulated in his Guilty Plea Agreement that he also committed another five armed robberies. (Doc. No. 42 ¶ 11.)

The Agreement also included, *inter alia*, the following provision:

> In exchange for the promises made by the [G]overnment in entering this plea agreement, the [D]efendant agrees that he voluntarily and expressly waives all rights to appeal or collaterally attack the [D]efendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

(Id. ¶ 13.)

At the November 3 Change of Plea Hearing, I asked Defendant if he understood the waiver:

> Court: So do you understand, as set out in your [G]uilty [P]lea [A]greement, that you are expressly and voluntarily waiving, meaning giving up forever, all your rights to appeal or collaterally attack your conviction, sentence, or any other matter relating to this prosecution? And that this waiver includes the waiver of the right to appeal or collaterally attack under any provision of the law?
>
> Defendant: Yes.

(Doc. No. 151 at 33:1–9); see Fed. R. Crim. P. 11(b)(1)(N) (the Court must ensure that the defendant understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"). After conducting an extensive colloquy, I accepted the guilty plea as knowing, voluntary, and intelligent. (Doc. No. 40.)

Defendant's Guidelines range was 481–505 months' imprisonment. (Doc. No. 152 at 3.) I granted the Government's Motion for a Downward Departure, and sentenced Defendant to 108 months' imprisonment, five years of supervision, $6,225.44 in restitution, and a special assessment of $700. (See id.; Doc. No. 69.) He has served some 37 months of his 60-month supervision term. (Doc. No. 143 at 4.)

Since his release from prison, Defendant, who is 37, reports that he has maintained a stable Philadelphia residence and steady employment at Amazon. (Id. at 1, 4, 5.) Although Defendant was addicted to Percocet (indeed, he urges that the addiction caused him to commit the robberies), he has not informed me as to whether he has maintained his sobriety or completed a drug treatment

program. (See id. at 4.) Defendant avers that his Probation Officer has classified him as a "low/moderate risk level" offender, "which requires him to report in person . . . every three months." (Id. at 4.) Yet, the Government has confirmed that Defendant is a "moderate category 3" offender, "which requires *minimum* monthly reporting and is supervised by an intensive supervision officer." (Doc. No. 152 at 17 (emphasis in original).)

Defendant now seeks an early end to his supervision. (Doc. No. 143.) The matter is fully briefed. (Doc. No. 152.)

## II. LEGAL STANDARDS

After a defendant has served one year of supervision, the Court may order early termination, after considering: (1) the nature and circumstances of the offense[s] and the defendant's history and characteristics; (2) the need to afford adequate deterrence, protect the public from further crimes, and provide Defendant with training and care; (3) the kinds of established sentence and sentencing range; (4) pertinent Sentencing Commission policy statements; (5) the need to avoid unwarranted sentencing disparities; and (6) the need to provide restitution. 18 U.S.C. §§ 3553(a), 3583(e); United States v. Melvin, 978 F.3d 49, 52 (3d Cir. 2020). Although I need not make explicit findings with respect to these factors, I must consider them. See Melvin, 978 F.3d at 52–53.

On November 1, 2025, the Sentencing Commission "added new factors 'the court may wish to consider,'" including: "any history of court-reported violations during the term of supervision, the defendant's ability to lawfully self-manage, substantial compliance with the conditions of supervision, the defendant's engagement in prosocial activities, a demonstrated reduction in risk level, and whether termination will jeopardize public safety." United States v.

Dorval, No. 23-165, 2025 WL 3762824, at *2 (E.D. Pa. Dec. 30, 2025) (quoting U.S.S.G. § 5D1.4(b) app. n.1(b)).

The Court may grant early termination if it is "warranted by the defendant's conduct and is in the interest of justice." Melvin, 978 F.3d at 52 (citing § 3583(e)(1)). The Court "need not find that an exception, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." Id. at 53 ("[E]xtraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such termination.").

Finally, it is the defendant's burden to show that early termination is warranted. See United States v. McDowell, 888 F.2d 285, 291 (3d Cir. 1989); United States v. Weber, 451 F.3d 552, 559 n.9 (9th Cir. 2006) (collecting cases).

## III. WAIVER

The Court may enforce a plea agreement waiver only if: (1) the waiver applies; (2) the waiver was knowing and voluntary; and (3) enforcing the waiver would not work a miscarriage of justice. United States v. Damon, 933 F.3d 269, 272 (3d Cir. 2019) (quoting United States v. Corso, 549 F.3d 921, 927 (3d Cir. 2008)).

The Government argues that the waiver provision in Defendant's Guilty Plea Agreement precludes him from seeking early termination of supervision. (Doc. No. 152 at 3–12.) I disagree.

Plea agreements, "although arising in the criminal context, are analyzed under contract law standards." Damon, 933 F.3d at 272 (quoting Corso, 549 F.3d at 927). As with any contract, the Court must first review the plea agreement's text, and determine if it is ambiguous—i.e., "capable of more than one reasonable interpretation." Id. at 272–73 (quoting United States v. Gebbie, 294

F.3d 540, 551 (3d Cir. 2002)). The Court must construe any textual ambiguities in a plea agreement against the Government. United States v. Williams, 510 F.3d 416, 422 (3d Cir. 2007).

Once again, Defendant waived "all rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." (Doc. No. 42 ¶ 13.) The instant Motion is certainly a challenge to Defendant's "sentence." See United States v. Wilson, 707 F.3d 412, 414 (3d Cir. 2013) ("the word 'sentence' in a broad appellate waiver . . . includes the terms and conditions of supervised release"). Yet, Defendant's Motion is neither an "appeal" nor a "collateral attack." See Appeal, Black's Law Dictionary (12th ed. 2024) ("To seek review (from a lower court's decision) by a higher court"); Collateral Attack, Black's Law Dictionary (12th ed. 2024) ("An attack on a judgment in a proceeding other than a direct appeal; esp., an attempt to undermine a judgment through a judicial proceeding in which the ground of the proceeding (or a defense in the proceeding) is that the judgment is ineffective."); United States v. Cooley, 590 F.3d 293, 297 (5th Cir. 2009) (a § 3582(c)(2) motion is not an appeal or collateral attack barred by a plea waiver); United States v. Chavez-Salais, 337 F.3d 1170, 1172 (10th Cir. 2003) (same).

If I determine that the waiver provision in Defendant's Plea Agreement is ambiguous, I must construe it against the Government and rule that Defendant has not waived his right to seek early termination of his supervision. See Williams, 510 F.3d at 422. As set out in the attached Appendix, Members of this Court "have reached conflicting decisions on whether the waiver at issue here bars motions for early termination of supervised release." United States v. Fluellen, No. 09-497-01, 2022 WL 309159, at *5 (E.D. Pa. Feb. 2, 2022) (collecting cases); see Appendix, infra. These rulings underscore the waiver's ambiguity: the provision is "capable of more than one

reasonable interpretation." Damon, 933 F.3d at 272–73 (quoting United States v. Gebbie, 294 F.3d 540, 551 (3d Cir. 2002)).

The waiver provision in Damon was broader than that presented here. It stated that Damon waived his right to file "any appeal, any collateral attack, *or any other writ or motion* . . . which *challenges* the sentence imposed." 933 F.3d at 271 (emphasis added). The Circuit ruled that because a motion for early termination is a "challenge[] [to] the sentence imposed," the waiver covered the defendant's motion. Id. at 274. Presumably that is why after Damon, the Government revised its standard guilty plea waiver provision to include the language the Damon Court found dispositive: that in pleading guilty, the defendant would give up "all rights to file any appeal, any collateral attack, *or any other writ or motion which challenges* the defendant's conviction, sentence, or any other matter relating to this prosecution." See, e.g., United States v. Castillo Pena, No. 25-380-02, Doc. No. 149 ¶ 13 (emphasis added). In thus expanding the waiver's scope, the Government implicitly recognized that the instant waiver is more limited.

The waiver text here includes none of the critical language on which the Damon Court based its decision. Accordingly, "the only 'question [here] [is] whether [Defendant's] [M]otion is an appeal, a collateral attack, or neither.'" Fluellen, 2022 WL 309159, at *6 (quoting Mabry, 528 F. Supp. 3d 349, 354 (E.D. Pa. 2021). I believe it is neither. It is certainly not an appeal. Moreover, "even if one could read Damon for the proposition that a motion under § 3583(e) constitutes a collateral attack, the case is not on point, as it was decided in 2019"—three years before Defendant pled guilty—and is thus inapposite to the "plain meaning" of the waiver before me. Mabry, 528 F. Supp. 3d at 354 n.1 ("[T]he 'plain meaning' is understood as of the time that the plea agreement was executed.") (quoting United States v. Williams, 536 F. App'x 169, 172 n.3 (3d Cir. 2013)).

Since deciding Damon, the Circuit, construing waiver language nearly identical to that presented here, rejected a defendant's challenge to the denial of early termination. See United States v. Oyerinde, 784 F. App'x 111 (3d Cir. 2019). The Government there did not argue before the District Court that the waiver barred the defendant's request for early termination of supervision. See United States v. Oyerinde, No. 11-514, 2013 WL 3153739 (E.D. Pa. June 21, 2013). Rather, *after* Judge Pappert denied the request on the merits and the defendant appealed, the Government first sought to enforce the waiver. 784 F. App'x at 113 n.12. The Circuit suggested this might have been a tactical choice:

> The Government's decision not to invoke the waiver before the District Court could be explained by a view that the Government decided that the best way to proceed before the District Court was to address the merits. This, however, should not preclude them from relying on the appellate waiver to bar further review. Cf. United States v. Goodson, 544 F.3d 529, 535 & n.4 (3d Cir. 2008) (acknowledging that "the [G]overnment may always choose not to invoke the appellate waiver").

Id. at 113 n.12. The Circuit thus did not address whether at the trial court level the waiver barred the motion for early termination. Members of this Court have nonetheless interpreted Oyerinde to suggest that the wavier provision would have barred the motion before Judge Pappert, had the Government invoked it. See Mogilyanksy, No. 08-711, 2026 WL 1707157, at *5 (E.D. Pa. June 12, 2026) (collecting cases). Yet, the Oyerinde Court's reasoning would seem to limit the waiver's applicability to appeals. 784 F. App'x at 113 ("Before our Court, the Government moved to enforce Defendant's appellate waiver. For the following reasons, we agree with the Government and conclude that the waiver before us bars this appeal."). Indeed, the Government may have failed to raise the argument before Judge Pappert because it recognized that the waiver did not apply at the trial court level to a motion for early termination. In any event, this lack of clarity impugns Oyerinde's applicability to the instant case.

There is thus no controlling authority as to whether the instant waiver language bars Defendant's Motion. In these circumstances, I will construe that ambiguity against the Government and rule that at the trial court level, the instant waiver provision does not preclude Defendant from seeking early termination.

In light of my ruling, I will not address whether Defendant's waiver of his rights under § 3583(e) was knowing or voluntary.

## III. EARLY TERMINATION OF SUPERVISION IS NOT WARRANTED

Because I have ruled Defendant did not waive his § 3583(e) rights at the trial court level, I will address his Motion on the merits.

Defendant has complied with the terms of supervision, including paying the ordered restitution. (Doc. No. 143 at 5.) He reports stable employment and resides in Philadelphia with his mother and younger brother (who has developmental disabilities, requiring Defendant to help provide care). (Id.)

The § 3553(a) factors nonetheless counsel against early termination. See United States v. Santiago, No. 12-566-1, 2024 WL 2092035, at *5 (E.D. Pa. May 9, 2024) ("The conduct cited by defendant in support of his Petition is commendable. However, it is nothing more than what is required under the terms of defendant's probation.") (quoting United States v. Guilliatt, No. 01-408, 2005 WL 589354, at *1 (E.D. Pa. Jan. 18, 2005)).

For over a month, Defendant committed a series of ten violent robberies—several involving the use of a firearm. Although Defendant has no prior felony or misdemeanor convictions, "maintaining [his] supervised release will help keep [him] from 'backsliding' and 'protect against future criminal conduct.'" Dorval, 2025 WL 3762824, at *2 (quoting United States v. Thena, No. 12-133, 2025 WL 2165937, at *2 (E.D. Pa. July 30, 2025)); United States v.

Volkert, No. 22-172, 2026 WL 325666, at *4 (E.D. Pa. Feb. 6, 2026) ("[T]he fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community.")

Defendant has served a little more than half his supervisory term. See United States v. Canalichio, No. 06-641-1, 2024 WL 1936227, at *3 (E.D. Pa. May 1, 2024) (denying early termination in part because the defendant had served just over half his term of supervision). I cannot determine if he has stopped abusing Percocet or completed a drug treatment program. U.S.S.G. §5D1.2, cmt. n.5 ("[T]he court may wish to consider early termination of supervised release if the defendant is an abuser of narcotics, other controlled substances, or alcohol who, while on supervised release, successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant.")

The interests of justice also do not weigh in favor of early termination. See Thena, 2025 WL 2165937, at *2 ("[G]ood behavior, without more, is insufficient to justify early termination."). Defendant alleges that, "[u]pon information and belief," his "active status" on supervision makes him ineligible for "higher managerial positions at Amazon." (Doc. No. 143 at 5.) Yet, Defendant does not identify the managerial positions for which he is otherwise qualified, any Amazon policies that purportedly preclude his advancement, or whether he has applied for—or even inquired into—such positions. Nor has he provided any information about his current job, his qualifications, or how long he has worked at Amazon. Disturbingly, Probation has informed the Government that although Defendant has reported his employment with rideshare companies, it has no record of his employment at Amazon. (Doc. No. 152 at 17.)

Defendant plainly has "not demonstrated that the conditions of supervised release interfere with his life in a problematic way." Thena, 2025 WL 2165937, at *2.

## IV. CONCLUSION

In sum, although Defendant did not waive his right to seek an early end to supervision, he has not shown that such relief is warranted. Accordingly, I will deny his Motion.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*

Paul S. Diamond, J.